UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**BARBARA ROSE,**

    **Plaintiff,**

v.

**VELOCYS, INC.,**

    **Defendant.**

Case No. 2:17-cv-635
Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Elizabeth Preston Deavers

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (ECF No. 13), Defendant's Memorandum in Opposition (ECF No. 15), and Plaintiff's Reply in Support (ECF No. 16). For the reasons that follow, Plaintiff's Motion is **GRANTED in PART** and **DENIED in PART**.

### I.

Plaintiff Barbara Rose ("Rose") sued her former employer, Velocys, Inc. ("Velocys"), under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, seeking compensation for approximately three years of unpaid overtime work. She was employed as an accountant for Velocys from April 2012 to August 2017. Rose alleges Velocys failed to pay her for her two daily smoke breaks, which qualify as compensable work. Additionally, Rose claims that Velocys withheld overtime compensation by failing to account for these breaks.

In her Complaint (*Pl.'s Compl.*, ECF No. 1), Rose asserts three causes of action against Velocys: (1) failure to properly pay overtime compensation in violation of the FLSA; (2) failure to properly pay overtime compensation in violation of the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), Ohio Rev. Code § 411; and (3) failure to make proper wage payments for all

hours worked within thirty days of the day the work was performed. Rose now moves for summary judgment on Counts One and Two, which would be determinative of Count Three if Rose prevails because she would not have been paid for compensable work for more than 30 days.

According to Rose, the undisputed facts demonstrate that Velocys paid Rose forty hours each week yet required her to report to work for more than forty compensable hours. Therefore, Rose argues, Velocys denied her overtime compensation to which she was lawfully entitled under 29 U.S.C. §§ 206 and 207. As a result, in Rose's view, the undisputed facts demonstrate that Velocys willfully withheld her overtime compensation, and the FLSA thus requires Velocys to pay Rose liquidated damages based on a three-year statute of limitations.

In response, Velocys argues that Rose misapplied the FLSA and that material facts are in dispute, including: (i) whether Rose took smoke breaks, (ii) the length of Rose's smoke breaks, and (iii) the compensability of those breaks. *Def.'s Mem. in Opp'n* at 1. Velocys also contends that if the Court finds in favor of Rose on liability, she is only entitled to two years of back pay and liquidated damages because it did not act willfully as that term is defined under the FLSA.

## II.

In April 2012, Rose began working for Velocys as an Accounting Clerk at the Plain City, Ohio office, where she maintained project budgets for several departments; performed customer invoicing; remedied delinquent invoices; audited and processed expense reports; and assisted with payroll and auditing. *Rose Decl.* at ¶¶ 4, 5. Velocys paid Rose on an hourly basis. *Rose Decl.* at ¶ 4.

Rose directly reported to Hayley Neumeier, an Accounting Supervisor. *Rose Decl.* at ¶ 6. Neumeier reported to Crystal Mayle, Velocys's Controller. *Neumeier Dep.* at 11:3–4.

On their first day of work, hourly employees typically meet with Velocys's Manager of Human Resources ("HR") and Administration, Bettyann Hale. *Hale Dep.* at 10: 21–11:6. In those meetings, Hale explains Velocys's policies and procedures, timecard submission process, core office hours, and obtains any other new-hire documentation needed from the employee. *Id.* After meeting with Hale, new employees set their work schedules with their direct supervisors. *Hale Dep.* at 11:1–6.

Velocys allowed employees to adjust their work schedules, as long as the employees were present during core office hours—between 9:00 a.m. and 4:00 p.m. *Hale Dep.* at 11:1–6. Velocys permitted hourly employees to take hour-long unpaid lunch breaks. *Hale Dep.* at 11:20–12:5. During Rose's employment, Velocys also allowed hourly employees to take breaks throughout the day. *Rose Decl.* at ¶ 12.

Velocys never implemented a written break policy, but permitted employees to take breaks as needed. *Hale Dep.* at 11:20 – 12:5; *Rose Decl.* at ¶ 12. For example, if an employee needed "to get some coffee, go to the restroom, make a phone call, get up and walk around a little bit, that's very much permissible, and no one's going to say anything to you." *Hale Dep.* at 12:1–5. Velocys did not limit employees to a certain number of breaks each day. *Hale Dep.* at 13:13. Velocys did not limit employees to certain activities during their breaks. *Hale Dep.* at 11:20–12:5. Also, Velocys did not limit how long employees could spend on a break, so long as they did not abuse the privilege. *Hale Dep.* at 13:15–16.

Velocys allowed employees to take smoke breaks in several designated areas just outside the building. *Hale Dep.* at 12:16–24. One of the designated areas was outside the front of the office, and the other was near the rear. *Id.* Velocys also allowed employees to smoke in their cars. *Hale Dep.* at 24:23.

3

Initially, Rose worked from 8:00 a.m. to 5:00 p.m., with an hour-long unpaid lunchbreak for a total of 40 hours per week paid. *Rose Decl.* at ¶ 7. Rose also typically took two smoke breaks during her workday: one in the morning (between 9:00 a.m. and 9:30 a.m.) and one in the afternoon (between 2:15 p.m. and 2:30 p.m.) with other employees who also smoked. *Rose Decl.* at ¶¶ 9, 15. Rose was always paid for 40 hours per week. *Id.* at ¶ 30. That is, Velocys compensated her for her smoke breaks.

In January 2014, HR Manager Hale avers that two hourly employees complained that Rose took two long smoke breaks in addition to regular breaks. *Hale Dep.* at 14:20–15:3. Prior to the complaints, Hale was unaware of Rose's work schedule and break times. *Id.* Hale testified that she informed the complaining employees that she would investigate the issue. *Hale Dep.* at 15:8-9. Hale then spoke to Rose's supervisor, Neumeier. *Id.* at 15:11-12. Hale testified that she asked Supervisor Neumeier about Rose's breaks and that Neumeier stated that she was unaware of "when [Rose was] leaving or coming or going" because Supervisor Neumeier used to "sit with [her] back to [Rose]." *Hale Dep.* at 15:20–23. Neumeier testified that she did not remember much about Rose's smoke breaks except that "Rose would leave some time in the morning and had a normal lunch break and then would leave in the afternoon." *Neumeier Dep.* at 22:14–18. Neumeier further testified that Rose would take two approximately 15-minute breaks to smoke in addition to any other breaks she needed such as "to use the restroom, get water whenever she needed outside or her morning and afternoon [smoke] break[s]." *Neumeier Dep.* at 35:23–36:5.

In HR Manager Hale's declaration, she avers that she "investigated the complaints and learned that [Rose] took excessive breaks that usually exceeded 20 minutes." *Hale Decl.* at ¶ 5. At her deposition, Hale testified that the investigation entailed speaking with two hourly

employees who worked at the front desk. *Hale Dep.* at 24:7–15. Hale testified that those employees told her Rose's breaks were "about 20 to 25 minutes easily." *Id.*

Hale and Supervisor Neumeier then met with Rose to discuss her smoke breaks, at which point they informed Rose that other employees complained she had been taking "extended" breaks throughout the day. *Neumeier Dep.* at 20:17–21:4; *Hale Dep.* at 14:22–16:11. Rose explained that she typically took two smoke breaks each day—one in the morning and one in the afternoon. *Rose Decl.* at ¶ 18. Rose avers her breaks lasted at most 15 to 20 minutes each. *Rose Decl.* at ¶ 18.

HR Manager Hale informed Rose that she had three options: (1) Rose could shorten her 60-minute lunch breaks to 30 minutes; (2) Rose could report to work 30 minutes earlier or leave 30 minutes later; or (3) Rose could reduce her daily paid hours from 8 to 7.5. *Hale Dep.* at 19:12 – 20:2; *Rose Decl.* at ¶ 21. Rose was never told that smoke breaks were impermissible or that she would be disciplined if she continued taking them. *Hale Dep.* at 20:1–10; *Rose Decl.* at ¶ 21. Rose decided to report to work 30 minutes earlier than her scheduled shift. *Rose Decl.* at ¶ 25.

Rose planned to arrive at work around 7:30 a.m. and leave at 5:00 p.m. *Id.* Hale and Neumeier informed Rose that she would be paid eight work hours, since her 60-minute lunch break and two "extended" smoke breaks were uncompensated breaks. *Neumeier Dep.* at 31:19 – 32:5; *Hale Dep.* at 20:16-24; *Rose Decl.* at ¶ 25. During the meeting, Rose protested that other employees take multiple smoke breaks throughout the day, but that no other employee was required to make up time for breaks. *Rose Decl.* at ¶ 23.

Rose memorialized the meeting, sending Supervisor Neumeier and HR Manager Hale an email, that stated:

> Starting tomorrow, I will be in early, around 7:15 – 7:30 and will take 2 daily smoke breaks one in the morning around 9:30 – 10:00 and one in the afternoon

around 2:30 – 3:00, depending on work load. This will be my daily schedule. I would like to point out that no other smoking employee at Velocys is required to make up smoke break time, and some spend much more time smoking than I do. I take two breaks on average a day, and most take 3-5. Maybe since this is occurring, Velocys should publish a smoking policy?

See Ex. D.

On January 29, 2014, Rose began reporting to work at approximately 7:30 a.m. *Pl.'s Mot. S.J.*, Ex. D. Shortly after, Rose submitted a timecard that listed 8.5 hours of work. *Rose Decl.* at ¶ 27. Hale directed Rose to resubmit a timecard that listed only 8 hours. *Id.*

### III.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party, who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also*

6

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (The requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts."). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

## IV.

The FLSA requires employers to compensate their employees for all hours worked. 29 U.S.C. §§ 206, 207. The FLSA also mandates that employers compensate employees at a rate not less than time and one-half for work exceeding forty hours per week, *i.e.*, for overtime. 29 U.S.C. § 207(a)(1).

To prevail on an unpaid overtime claim under the FLSA, a plaintiff must prove four elements: (1) the uncompensated activity constitutes work; (2) the time worked is not de minimis and is reasonable in relation to the principal activity; (3) the employer had actual or constructive knowledge of the plaintiff's overtime work; and (4) the amount of time worked. FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1); OMFWSA, Ohio Rev. Code § 4111. Courts interpret Ohio's wage and hour laws in accordance with the FLSA, therefore the Court will address Rose's claims under the FLSA and the OMFWSA simultaneously. *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d 725, 745 (S.D. Ohio 2006), aff'd, 225 F. App'x 362 (6th Cir. 2007).

### A. Compensability of Breaks Under the FLSA

The FLSA does not require employers to permit employee breaks. *Sec'y United States DOL v. Am. Future Sys.*, 873 F.3d 420, 425 (3rd Cir. 2017). If an employer permits short breaks, however, the employees must be paid for that break time. 29 C.F.R. § 785.18. Therefore, the

number of hours worked is not limited to the time an employee performs her job duties. *Armour & Co. v. Wantock*, 323 U.S. 1226, 133-34 (1944).

The Code of Federal Regulations provides some guidance on what constitutes a "short break," explaining that breaks lasting "five minutes to about 20 minutes" are compensable as hours worked. 29 C.F.R. § 785.18. In total, that regulation states:

> Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time.

29 C.F.R. § 785.18.

Velocys argues that Section 785.16, rather than 785.18, applies here. Section 785.16 provides that:

> Periods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked. He is not completely relieved from duty and cannot use the time effectively for his own purposes unless he is definitely told in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived. Whether the time is long enough to enable him to use the time effectively for his own purposes depends upon all of the facts and circumstances of the case.

29 C.F.R. § 785.16. In *American Future Systems*, the Third Circuit addressed this issue and determined that while Section 785.16 provides general guidance regarding compensability, Section 785.18 provides a "separate and more specific regulation carving out the compensability of breaks that are twenty minutes or less." *Sec'y United States DOL v. Am. Future Sys.*, 873 F.3d 420 (3rd Cir. 2017). Therefore, the court concluded, "where breaks of twenty minutes or less are in question, Section 785.16 is inapplicable." *Id.* at 430. The Court agrees and finds that Section 785.18 applies to these circumstances.

8

Interpreting Section 785.18, the Department of Labor ("DOL") has "consistently held for over 45 years" that short breaks lasting 20 minutes or less are compensable as hours worked. U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter Fair Labor Standards Act (FLSA), 1996 DOLWH LEXIS 39, 1996 LW 1005233, at *1 (Dec. 2, 1996) ("1996 Letter"). In its 1996 Letter, the DOL squarely addressed this issue, stating:

> Employees have always taken short work breaks, with pay, for a myriad of non-work purposes – a visit to the bathroom, a drink of coffee, a call to check the children, attending to a medical necessity, a cigarette break, etc. The Department has consistently held for over 45 years that such breaks are hours worked under the FLSA, without evaluating the merits of an employee's activities. This position, found at 29 C.F.R. § 785.18, is based squarely in the premise that short breaks are common in industry, promote the efficiency of employees and are customarily treated as work time by employers.
>
> ....
>
> While we fully appreciate the extraordinary difficulties presented to employers by smoking in the workplace, we believe that the government should not be in the business of determining what employees do on short work breaks, much less attempting to evaluate which short breaks merit or do not merit compensation. We strongly believe that employers and employees are best served by the bright line time test currently provided in Section 785.18.

*Id.*

The parties have not cited to any Sixth Circuit case that addresses whether Section 785.18 applies as a bright line test in similar circumstances. In other circuits, however, courts have consistently applied Section 785.18, the twenty-minute rule, as a bright line. For example, as stated *supra*, in *Secretary American Future Systems*, the Third Circuit unanimously determined that the 1996 Letter's bright line test applies, and so concluded that all breaks 20 minutes or less are compensable as hours worked. *Am. Future Sys.*, 873 F.3d at 429. The defendant in that case argued that, as a policy matter, the bright line rule might lead to a slippery slope where employees could take as many 20-minute breaks as they wish yet still have a right to paid for all those breaks. *Id.* at 431-32 (quoting *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 442 (S.D. Ind.

9

2012)). The Third Circuit acknowledged that possibility but still applied the bright line test, explaining that employers may discipline or terminate an employee for abusing a break policy without violating the FLSA. *Id.* at 432. The *American Future Systems* court found that refusing to compensate an employee for taking additional or unauthorized breaks, however, is an FLSA violation. *Id.*

As Rose correctly points out, courts in other circuits have consistently applied Section 785.18 in cases regarding breaks that are 20 minutes or less, and those courts have found that Section 785.18 requires a bright line test. In the Eighth Circuit, the court applied Section 785.18 and required the employer to pay its employee for 15-minute breaks each morning. *Brown v. L&P Industries, LLC*, 2005 U.S. Dist. LEXIS 39920, 2005 WL 3503637, at *6 (E.D. Ark. Dec. 21, 2005); *see also Petrone v. Werner Enterprises, Inc.*, 2012 U.S. Dist. LEXIS 146324, 2012 WL 484900, at *3 (D. Neb. Oct. 11, 2012). In *DeKeyser v. Thyssenkrupp*, a district court in the Seventh Circuit relied on Section 785.18 to conclude that "additional minutes taken outside of [the employer's] provided rest breaks should be considered compensable work time under the FLSA." *DeKeyser v. Thyssenkeupp Waupaca, Inc.*, 747 F. Supp. 2d 1043, 1056 (E.D. Wisc. 2010). In *Martin v. Waldbaum, Inc.*, a district court in the Second Circuit analyzed Section 785.18 and concluded that breaks less than twenty minutes are compensable. *Martin v. Waldbaum, Inc.*, 1992 U.S. Dist. LEXIS 16007, 1992 WL 314898, at *1 (E.D.N.Y. Oct. 16, 1992); *see also Solis v. Cindy's Total Care, Inc.*, No. 10-7242, 2012 U.S. Dist. LEXIS 1808, 2012 WL 28141, at *9, 19 (S.D.N.Y. Jan. 5, 2012).

Velocys argues that the bright line test should not apply, but instead the Court should analyze the totality of the circumstances. To support its argument, Velocys cites *Mitchell v. Greinetz*, a Tenth Circuit case that applied a fact-intensive test when determining whether short

10

breaks are predominantly for the benefit of the employer or the employee. *Mitchell v. Greinetz*, 235 F.2d 621, 625 (10th Cir. 1956). Velocys also directs the Court to *Garcia*, a decision from a district court in the Tenth Circuit, which follows *Mitchell* as binding precedent. *Garcia v. Tyson Foods, Inc.*, 766 F. Supp. 2d 1167, 1183-84 (D. Kan. 2011). Finally, Velocys relies upon *Spiteri v. AT&T Holdings, Inc.*, 40 F. Supp. 3d 869 (E.D. Mich. 2014), from our sister district court, which discusses Section 785.18.

Given the nature of this case, Velocys's reliance on *Mitchell* and *Garcia* is understandable, but those cases prove to be inapposite. The Tenth Circuit determined *Mitchell* in 1956, forty years before the DOL's 1996 Letter. To follow *Mitchell* and *Garcia*, then would require the Court to ignore the 1996 Letter and all the cases cited above that have applied Section 785.18 as a bright line test for short breaks. Additionally, *Spiteri* is materially distinguishable. *See Spiteri*, 40 F. Supp. 3d 869. As Rose notes, *Spiteri* dealt with disability discrimination and FLSA retaliation claims, as well as an employer that set strict break policies. *Id.* at 874. Unlike *Spiteri*, Rose did not require special accommodations for medical issues.

Applying the law to the material facts of this case, the Court finds that Rose's testimony regarding the frequency and length of her breaks is admissible evidence proper for the Court's consideration on summary judgment. Fed. R. Civ. P. 56(c)(1)(A). Velocys has offered no admissible evidence to dispute Rose's account of her daily smoke breaks.

Velocys makes an unsupported statement in its memorandum that Rose's "smoke breaks were all longer than 15 minutes and usually lasted about 25 minutes." *Def.'s MIO to MSJ* at 3. Additionally, Velocys claims that "Plaintiff's smoke breaks were never just 15 minutes." *Id.* No admissible testimony supports this allegation.

11

HR Manager Hale testified that Rose may have occasionally taken smoke breaks that exceeded 20 minutes, but admitted she had no personal knowledge of this. *Hale Decl.* at ¶ 5; *Hale Dep.* at 24:6–12. Hale testified that the two employees who sat at the office front desk, "Ray Baker, and [she] believe[d] Jana Miller," told her that Rose had taken smoke breaks for 20 or 25 minutes a few times. *Id.* at 24:1–24; 25:1–4. These statements allegedly made by Baker and Miller are inadmissible hearsay. *See* Fed. R. Civ. P. 56(c)(4); *see also* Fed. R. Evid. 602; *see also* Fed. R. Evid. 801(c). Additionally, Hale does not remember when these conversations occurred. *Hale Dep.* at 24–25:1–4. Rose's testimony is unrefuted.

The only remaining evidence pertaining to the length of Rose's smoke breaks is Rose's declaration and testimony, and Neumeier's testimony. Those sources are consistent and state that Rose's breaks lasted approximately 20 minutes or less. For example, in Rose's declaration, she avers that "[a]bsent unusual circumstances, my smoke breaks typically lasted 15 to 20 minutes." *Rose Decl.* at ¶ 18. Likewise, in Neumeier's deposition, she stated that Rose's breaks "would be between 15 some days. If it were raining, it would be less. If she had to make a phone call, it could be more. But, in general, 15 minutes, but it wasn't always 15 minutes to the clock." *Neumeier Dep.* at 35:16-20.

Section 785.18 of the Code of Federal Regulations requires employers to compensate employees for all breaks spanning 20 minutes or less. Because all admissible evidence before the Court state that Rose's breaks typically lasted less than 20 minutes, the Court finds that Rose's breaks were compensable as hours worked.

Based on the foregoing, the Court **GRANTS** Rose's Motion for Partial Summary Judgment on the issue of liability.

**B. Damages**

An employer who violates the overtime provisions of the FLSA is liable to the employee in the amount of the unpaid overtime compensation "and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Under the FLSA, liquidated damages "are compensation, not a penalty or punishment." *Elwell v. Univ. Hosp. Home Care Serv.*, 276 F.3d 832, 840 (6th Cir. 2002) (internal quotations omitted). Although the Sixth Circuit has stated that liquidated damages are "mandatory", Congress has provided courts with discretion to limit or deny liquidated damages when the employer demonstrates good faith. *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 584 (6th Cir. 2004); *but see* 29 U.S.C. § 260. In *Martin*, the Sixth Circuit explained that district courts have discretion not to award any liquidated damages when the employer shows that it acted in "good faith" and "had reasonable grounds for believing that [the] act or omission" was not an FLSA violation. 29 U.S.C. § 260; *see also Elwell*, 276 F.3d at 840. Without such proof, however, "a district court has no power or discretion to reduce an employer's liability for the equivalent of double unpaid wages." *Id.* (quoting *McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir. 1971)).

Based on the evidence before the Court, Velocys has raised genuine issues of material fact as to whether it acted in good faith when failing to pay Rose pursuant to the FLSA. The Court shall set a hearing on damages at which it will make this determination. Accordingly, the Court **DENIES** Rose's Motion for Partial Summary Judgment as it relates to the amount of damages.

**V.**

For the reasons above, the Court hereby **GRANTS in PART** and **DENIES in PART** Rose's Motion for Partial Summary Judgment. Specifically, Rose's Motion is **GRANTED** as to

13

liability and **DENIED** as to the amount of the damages that are due. The Court will schedule a hearing on damages forthwith.

**IT IS SO ORDERED.**

\_\_\_11-13-2018_____
**DATE**                                                    **EDMUND A. SARGUS, JR.**
                                                            **CHIEF UNITED STATES DISTRICT JUDGE**